HENRY FRITTS *vs.* THE NEW YORK AND NEW ENGLAND RAILROAD COMPANY.

Hartford Dist., Jan. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and F. B. HALL, Js.

The plaintiff was the owner and driver of a carriage and pair of horses, and had his team standing with others near a railroad station of the defendant company, at a place designated for the purpose, waiting the arrival of a train. While so waiting he left his team in charge of the hackman next him and went into the station to get a lunch. While he was absent the engineer of a switcher ran it down to a point close by the teams and blew with the whistle several excessively loud and shrill blasts to call in the flagman. All the horses became frightened, but the engineer, seeing this, continued to blow the whistle in the same manner, and the plaintiff's horses ran away and were injured. The court below found that the railroad company was guilty of negligence in the blowing of the whistle by the engineer in the manner in which he did, and that the plaintiff was not guilty of contributory negligence in leaving his horses in the care of another hackman while he went into the station. Held that the finding upon both points was one of fact that could not be reviewed.

And held that the plaintiff could legally recover for the reduced market value of the horses, but could not recover the amount that he could have earned with them during several weeks that they could not be used. He could, however, if he had shown it, have recovered what would have been the value of their use if they had not been injured

It is provided by Gen. Statutes, § 1129, that appeals may be taken " to the Supreme Court of Errors next to be holden in the judicial district or county where the judgment was rendered," with a provision that appeals from the District Court of Waterbury " may be taken to the Supreme Court of Errors sitting at New Haven or Hartford." A later public act joined the counties of New Haven and Fairfield in one judicial district, with the sessions of the court at New Haven and Bridgeport alternately, and the next term for the district after a certain judgment was rendered by the Waterbury District Court was held at Bridgeport. Held that an appeal could be taken to the term of the Supreme Court at Bridgeport.

[Argued January 5th, decided March 6th, 1893.]

ACTION for an injury to the plaintiff's horses, harness and carriage, through the negligence of the defendant; brought to the District Court of Waterbury, and heard in damages, after a demurrer overruled, by *Crowell, J.*, Facts found and damages assessed at $325. Appeal by the defendant, the plaintiff also appealing on the ground of an error in the ruling of the court as to damages. The case is fully stated in the opinion.

*E. W. Robbins*, for the defendant.

1. The plaintiff was guilty of contributory negligence. *Quarman* v. *Burnett*, 6 Mees. & W. 499; *Illidge* v. *Goodwin*, 5 Car. & P., 190; *Lynch* v. *Nurdin*, 4 Perry & D., 672; *Deville* v. *Sou. Pacific R. R. Co.*, 50 Cal. 383; *Norris* v. *Kohler*, 41 N. York, 42; *Gray* v. *Second Av. R. R. Co.*, 65 id., 561; *Buckingham* v. *Fisher*, 70 Ill., 121; *Loeser* v. *Humphrey*, 41 Ohio St., 378. The case at bar is much stronger than those here cited. It is not simply a case of horses left unhitched in the street, as to which there might be many modifying circumstances. The plaintiff's horses were standing on railroad ground. The hack was backed up against a depot platform with a railroad freight yard as well as main tracks directly behind the platform. In such a place, where engines are liable to pass and whistle at any moment, the duty of a hack driver is very plain. He should not leave his horses headed toward the street so that they will get under way without a moment's check, while he goes off to get

lunch. Nor is his carelessness excused by his asking another driver to look after the horses. That will do very well if no engine comes along. But if it does, the other hack driver will have his own horses to look after. It would have been the first thought of a prudent man, no matter how gentle his horses were, if he was going to leave them in such a place, at least to face them towards the platform and hitch them there. The standard of duty is here certain and definite, and the plaintiff's conduct did not come up to the standard. He is, therefore, guilty of contributory negligence in the eyes of the law. *Nolan* v. *N. York, N. Haven & Hartford R. R. Co.*, 53 Conn., 461; *Bailey* v. *Hartford & Conn. Valley R. R. Co.*, 56 id., 444; *Dyson* v. *N. York & N. Eng. R. R. Co.*, 57 id., 9; *Gallagher* v. *N. York & N. Eng. R. R. Co.*, id., 442; *Farrell* v. *Waterbury Horse R. R. Co.*, 60 id., 239.

2. The plaintiff's appeal should be struck from the docket. Gen. Statutes, § 1129, provides that appeals from the judgments or decrees of the District Court of Waterbury may be taken to the Supreme Court of Errors sitting at New Haven or Hartford. The defendant's appeal was taken to the Supreme Court of Errors sitting at Bridgeport, and is invalid.

3. There was no claim that the plaintiff's horses had their value impaired by the injuries they received. These were cured, and the plaintiff was awarded by the court the cost of curing them. The plaintiff testified that the runaway as distinguished from the injuries caused a loss of reputation, and therefore of the market value of his horses. The court considered such damage too uncertain and remote, and in so doing did not err.

4. The plaintiff set up a claim for some earnings which he might have made in his business except for the injuries to his hack and horses caused by the runaway. The defendant objected to the reception of this as being impertinent, and it is submitted that the court erred in overruling this objection. The defendant then demurred to these allegations, and it is submitted that the court erred in overruling this demurrer. The court finds that the plaintiff probably

would have earned approximately seven dollars a day during the seven weeks while he was unable to use his horses and carriage, but it did not appear that he could not earn just as much by hiring other horses and another carriage, nor did it appear what in fact he did earn during this time. The court therefore rightly considered the damage claimed to be too uncertain and remote.

5. The question of remoteness is one of fact and not of law. *Gilman* v. *Noyes*, 57 N. Hamp., 627 ; *Penn. R. R. Co.* v. *Hope*, 80 Penn. St., 373 ; *Lake* v. *Milliken*, 62 Maine, 240 ; *Toledo etc., R. R. Co.* v. *Pindar*, 53 Ill., 447.

*J. O'Neill*, for the plaintiff.

FENN, J. In this action, the plaintiff having in the District Court of Waterbury obtained judgment for a less sum than he claimed to be entitled to, both parties appealed to this court, the plaintiff's appeal being taken to the next term of this court " to be holden at Bridgeport, within and for the third judicial district," and the defendant's appeal to the next term " to be held at Hartford." The defendant thereupon moved, in this court, that the plaintiff's appeal be stricken from the docket. By agreement this motion was argued with the appeals and the decision reserved.

We think the motion should not be allowed. General Statutes, section 1129, provides for the taking of appeals " to the Supreme Court of Errors next to be held in the judicial district or county where the judgment was rendered." At the close of this section there is a provision that appeals from the District Court of Waterbury " may be taken to the Supreme Court of Errors sitting at New Haven or Hartford." The plain object of this provision was, not to limit the right of appeal previously given, but to extend it to include a place without the judicial district or county, in case of appeal from the District Court of Waterbury. When, therefore, by chapter 141, public acts of 1889, the counties of New Haven and Fairfield were united in one judicial district, it ought not to be held that a party to a judgment

rendered in the District Court of Waterbury was thereby deprived of his right to appeal to the next term of this court in the judicial district or county where the judgment was rendered, simply for the reason that, by the merging of the two counties into one district, the next term for the county was by law to be held elsewhere in the district. We think the appeal was properly taken.

Coming then to the case. It appears from the finding that the plaintiff, a hackman, being, as was his custom, with a carriage and horses which he owned and used, at the defendant's passenger station in Waterbury, waiting the arrival of the train, hearing that the train was late, left his carriage in the usual place designated for that purpose by the defendant, requesting another hack driver to look after it, and went into the depot to procure a lunch. While he was absent the horses became frightened, owing, as was claimed, to the fault of the defendant, and ran away, causing injury to the horses and to the carriage.

The defendant's appeal contains two reasons :—error on the facts found, in holding that the conduct of the defendant amounted to negligence, and error in failing to find the plaintiff chargeable with contributory negligence. We think that, applying the principles and tests stated by this court in *Nolan* v. *New York, New Haven & Hartford R. R. Co.*, 53 Conn., 461, and in *Farrell* v. *Waterbury Horse R. R. Co.*, 60 Conn., 239, the finding of the court on both points must be held one of fact, which is conclusive and cannot be reviewed. In reference to the defendant's negligence it is found that the engineer of a switcher, in the performance of his duty, ran it down to a point nearly opposite the depot platform, in front of which the plaintiff's and other hackmen's teams were standing. He then blew four short blasts of the whistle to call in the flagman. The four blasts were excessively and unusually loud and shrill, frightening most if not all the horses, accustomed as they were to the cars and to standing at the platform, and they started forward. The engineer knew where the horses were standing, saw the plaintiff's horses jump and begin to run, and, notwithstand-

ing, continued to blow the whistle in an excessively and un-usually loud and shrill manner, and the court adds:—"I find as a fact that the defendant's engineer was negligent in blowing the whistle in such an excessive manner immediately behind the plaintiff's carriage, as there was no necessity of whistling at that particular place."

What duty then does the finding show that the court imposed upon the defendant? Nothing more than this, that in the conduct of their business, in the way and manner which seemed to them best, they should, to borrow the language of this court in *Isbell v. New York & New Haven R. R. Co.*, 27 Conn., 404, conduct themselves as the circumstances at the moment required, doing no unnecessary injury to the property of others. It was not the doing or failure to do a specific act; the case did not turn on "the legal effect of a fact." It was the performance of an act, the right to perform which the court did not question, in a manner which the court found excessive, unusual, unnecessary, calculated to cause injury, and which the defendant's servant saw was causing injury, but nevertheless continued, doing nothing to prevent the accident but something to aggravate it. This the court held to be negligence; and we cannot review it in order to reach an opposite conclusion. Indeed, although this is one of the errors assigned, the defendant's counsel have not referred to it either in their brief or in oral argument.

It was, however, strongly argued that the plaintiff, as a matter of law, was guilty of contributory negligence. And many cases in other jurisdictions were cited in which it has been held to be negligence to leave horses unhitched in the street. It is said that the case at bar is even stronger than this, since the horses were left standing in a place of special hazard. The finding however is, that the horses were left in care of a fellow hack driver. And we think that, following the principle enunciated in the cases to which we have referred, the inference of negligence from such circumstances, however much we might ourselves have been disposed to draw it, is not so certain or incontrovertible as to warrant

its decision as a matter of law by this court, but is properly to be treated as a question of fact. We therefore hold that there is no error on the defendant's appeal.

We come now to consider the plaintiff's appeal. Two questions are presented, raised upon the following finding: —" The market value of said horses was lessened in consequence of said runaway, fifty dollars each horse. The plaintiff was earning in his business, at the time of the accident, seven dollars each day, and he would doubtless have continued to earn at approximately the same rate but for the accident for the seven weeks next following, but in consequence of the accident he did not and could not use the horses or carriage during the seven weeks next following the accident. And the plaintiff claimed that he was entitled to recover the lessened market value of the horses, and also the money which he would have earned but for the accident. The court overruled these claims of the plaintiff as being too remote and uncertain, and the plaintiff duly excepted."

We think the court was correct in its ruling as to the plaintiff's prospective earnings. Conceding the point claimed by the plaintiff, that where personal property is injured and not destroyed, the value of the use during the time that the owner is necessarily deprived of it may be recovered, neither the decisions to this effect nor the principles upon which they are based assist the plaintiff to establish his present contention. He did not show or seek to show the value of such use. Whether the fact which the court has found is admissible as evidence tending in any degree to prove the value of such use of the horses and carriage, we need not decide. It is evident that it is not itself such value. That is, it is not the rule of damages, and the plaintiff offered no other evidence and made no other claim. Indeed, the mere proof of what he might have earned by the use of the property, with nothing to show what he might, and could and should, indeed did, earn without it, by procuring another team, or in other employment, ( " the value of the plaintiff's time to himself " ) furnishes very little information concern-

ing the plaintiff's real loss, whether the same be considered proximate or remote. But we think that the lessened market value of the horses in consequence of the runaway was a proximate and legitimate element of damage; and that this court practically though not expressly so held in the case of *Clinton* v. *Howard*, 42 Conn. R., 294.

In this last particular there is error on the plaintiff's appeal, and a new trial is granted.

In this opinion the other judges concurred.