**AMERICAN TELEPHONE & TELEGRAPH COMPANY, Plaintiff,**

v.

**CONNECTICUT LIGHT & POWER COMPANY, Defendant.**

**Civ. No. 14918.**

United States District Court,
D. Connecticut.

April 16, 1979.

Lawrence W. Iannotti, Tyler, Cooper, Grant, Bowerman & Keefe, J. Michael Sulzbach, Ronald J. Cohen, New Haven, Conn., for plaintiff.

Walter F. Torrance, Jr., Anthony M. Fitzgerald, Waterbury, Conn., for defendant.

## MEMORANDUM OF DECISION

DALY, District Judge.

This diversity action arises out of an incident that occurred on March 2, 1970, in

which a work crew of defendant Connecticut Light & Power Company (CL&P), while replacing a broken CL&P pole, damaged an underground telephone cable owned by plaintiff American Telephone & Telegraph Company (AT&T). The Court previously has ruled in plaintiff's favor on the liability phase of this bifurcated action. *AT&T v. CL&P*, Civil No. 14918 (D.Conn. May 4, 1978). The Court now is presented with the issue of the appropriate measure of damages. At trial on this issue, the parties stipulated that plaintiff expended $4,797.11 to repair the underground cable. The parties are in dispute, however, as to the amount, if any, plaintiff is entitled to recover for claimed loss of use of the cable. On this issue, the Court reaches the following findings of fact and conclusions of law:

*Findings of Fact*

1. On the afternoon of March 2, 1979, the AT&T Hartford-New Haven underground "B" telephone cable ("the cable") was damaged by a CL&P work crew.

2. The cable was out of service for less than twelve hours.

3. The cable contained 225 active circuits.

4. 2239.03 circuit hours were lost.

5. The cost to AT&T to repair the cable was $4,797.11.

6. During March, 1970, AT&T offered circuits on the cable for rent at the rate of $121.00 per month.

7. No evidence was offered from which it could be concluded that AT&T actually lost any operating revenue as a result of the cable being out of service.

*Conclusions of Law*

1. Plaintiff is entitled to recover $4,797.11 for the cost of repairing the cable.

2. Plaintiff is entitled to recover nominal damages of $1.00 for the loss of use of the cable.

*Discussion*

■■■ Plaintiff does not claim that any revenue actually was lost as a result of defendant's negligence.[1] Plaintiff seeks to recover only for the more abstract injury to its right to use the cable. In cases of negligent injury to personal property, where the injury is less than a complete loss but the owner has lost the use of the property during some period, the measure of damages in Connecticut is the difference in value between the property before and after the loss (normally measured by the cost of repair) plus the value of the use of the property during the period of necessary deprivation. *Anderson v. Gengras Motors, Inc.*, 141 Conn. 688, 692, 109 A.2d 502 (1954); *Cook v. Packard Motor Car Co.*, 88 Conn. 590, 600–601, 92 A. 413 (1914) (Wheeler, J., concurring). Plaintiff has the burden of proving the pecuniary value of such use. *Hawkins v. Garford Trucking Co., Inc.*, 96 Conn. 337, 341, 114 A. 94 (1921).

1. Plaintiff was required to return $69.20 to customers who rented circuits on the cable, but, for reasons to be explained, this sum is not properly recoverable in this action.

Some of the circuits on the cable were leased to private customers at the rate of $121.00 per month. Testimony indicated that plaintiff's liability for interruption of service to these circuits was limited by an F.C.C. tariff that provided that plaintiff would not be liable for consequential damage incurred by its rental customers, but would be required only to refund a portion of the rental fee. Plaintiff was not required, for instance, to compensate its rental customers for the possible added cost of making toll phone calls during the interruption of service. Plaintiff only was required to return to its rental customers the total sum of $69.20.

Plaintiff does not claim loss of profit, but even if such a claim were advanced, this sum might not be recoverable unless plaintiff could show that its profits did not increase as a result of rental customers' use of toll phone circuits during the discontinuation of service of their private rental circuits. This sum is not recoverable as damages for loss of use because alone it is not probative of the value of use. Plaintiff offered no evidence as to the number of rented circuits on the cable or as to the nature or effect of the tariff in accordance with which the figure of $69.20 apparently was computed. Without more evidence, the figure $69.20 is not probative of the value of use and, therefore, is not recoverable.

At the outset, a distinction should be drawn between loss of profits and loss of use. Loss of profits would be measured by the amount of profit that a plaintiff could prove would have been generated had the plaintiff not been deprived of the use of the property, less the amount of profit actually generated during the deprivation. Loss of use, on the other hand, is the loss of an incident of ownership—the right to use.[2]

. . . The value of an article to its owner . . . lies in his right to use, enjoy, and dispose of it. These are the rights of property which ownership vests in him, and whether he, in fact, avails himself of his right of use, does not in the least affect the value of his use. . . . His right of user, whether for business or pleasure, is absolute, and whoever injures him in the exercise of that right renders himself liable for consequent damage.

. . .

*Cook v. Packard Motor Car Co., supra* 88 Conn. at 603, 92 A. at 418 (Wheeler, J. concurring). The Court turns, then, to determining the proper means for measuring this element of damage.

Plaintiff argues that the loss of use should be measured by the difference between what revenue the cable could have generated during the loss of its use (such revenue claimed to be $30,809.05) and what it did generate ($0.00). Putting aside the problems presented by plaintiff's method for calculating the figure representing the amount of revenue the cable could have generated,[3] this theory of damages is incor-

2. "Ownership of an item of property carries with it the right to use, or to control the use of, that item of property. Therefore, where the defendant tortiously injuries [sic], destroys, or takes an item of property, there has been a loss of one of the valuable rights or interests in property—the right to use the property. Awarding plaintiff only the cost of repair or the decrease in market value fails to recognize that he has lost the use of the property item during the time reasonably needed to repair or replace it . . . .."
22 Am.Jur.2d *Damages* § 152 (1965).

3. Plaintiff reached its figure for the value of loss of use as follows: Plaintiff determined the average length of a paid conversation on AT&T's nationwide network during March, 1970 (7.98 minutes). Plaintiff divided this figure into one hour to determine the number of average-length conversations that would fit into one hour (7.52 average-length messages per hour). Plaintiff then computed its nationwide average revenue per paid message ($1.83 per message) and multiplied this times the number of average-length messages per hour (7.52) to determine the revenue per hour that would be produced by one circuit carrying the maximum number of average-length paid conversations every hour ($13.76 per circuit per hour). Plaintiff then apparently multiplied the number of circuits in the cable (225) by the average number of hours each was out of service to determine the number of circuit hours lost (2239.03 circuit hours lost). This figure was multiplied by the revenue per circuit per hour ($13.76) to determine the total dollar loss from the loss of use of the cable ($30,809.05). There are a number of reasons why this method is not probative of the value of the loss of use of the cable. To begin with, plaintiff has mixed its metaphors; the method above uses historical data but presumes that each circuit constantly would be busy, a presumption directly controverted by the evidence. If plaintiff were arguing that the damages for loss of use should be measured by the maximum revenue-producing potential of the cable, without regard to its historical revenue production, it would be necessary only to determine, based on AT&T's rates, what revenue could be generated if every circuit on the cable continuously carried the most expensive possible messages. It would be unnecessary to refer to the average revenue per call actually generated on the AT&T network. If, on the other hand, plaintiff were arguing that damages for loss of use should be computed by determining actual average revenue production, adjustments to its calculations would be necessary to reflect that the circuits are not constantly in use. The easiest way to reach a figure for average historical nationwide revenue production per circuit per hour would be to divide the total nationwide average revenue per hour by the total nationwide number of circuits.
Plaintiff's method of calculation, then, is a strange hybrid between two methods, one which would yield the maximum theoretical revenue production per circuit per hour and one which would yield the historical or actual average revenue per circuit per hour. Neither of these methods is proper for determining the value of the use of the cable because, while one is theoretical and one historical, both are based on prospective earnings, a factor that would be but a starting point for determining any claimed lost profits and that certainly alone is not determinative of the value of the use. *Fritts v. New York and New England R. R. Co.*, 62 Conn. 503, 509, 26 A. 347 (1893). Even if prospective earnings were a proper measure of the value of the use of the cable,

rect in that it more properly relates to loss of profits than to loss of use, and is contrary to the method approved by the Connecticut Supreme Court. *See Fritts v. New York & New England R. R. Co.*, 62 Conn. 503, 509–10, 26 A. 347 (1893).

The Connecticut Supreme Court has approved of the use of market rental value as the appropriate starting point for determining the value of use:

> The value of the use is fixed by finding the market value of the use of the property during the period of loss of use. The market rental value of the property is a material and relevant factor in helping to ascertain the value of the loss of use . . [b]ut rental value will not furnish the measure of damages for loss of use . .; [f]or the rental value . . . includes necessarily a substantial sum for wear and tear and depreciation. . . . Elements ordinarily *essential* to such a finding would be the value of the [property], its market rental value, less the proportion of this rental value which covers the wear and tear and depreciation in the use . . ., and the period of necessary deprivation of use.

*Hawkins v. Garford Trucking Co., supra* 96 Conn. at 340–41, 114 A. at 95 (emphasis added).

During March, 1979, plaintiff offered circuits on the cable for rent at the rate of $121.00 per month. Based on that evidence, the market rental value for March, 1970, of the total 225 circuits is $27,225.00. Dividing that figure by the number of days in March

yields a figure of $878.22 per day, or $439.11 per one-half day, the approximate time during which AT&T was deprived of the use of the cable.[4]

■ The market rental value, however, is not conclusive as to the value of the use, for the rental value may include an allowance for depreciation as well as for the overhead expenses and profits of carrying on the business of renting telephone cables. *Cook v. Packard Motor Car Co., supra* 88 Conn. at 593–94, 92 A. 413. The value of the use itself, then, is less than the market rental value, and plaintiff must either proffer evidence of the difference or forego recovery; the Court will not speculate. *Johnson v. Flammia*, 169 Conn. 491, 501, 363 A.2d 1048 (1975); *Hawkins v. Garford Trucking Co., Inc., supra* 96 Conn. at 341, 114 A. 94; *Cook v. Packard Motor Car Co., supra* 88 Conn. at 595, 92 A. 413; *Fritts v. New York and New England R. R. Co., supra* 62 Conn. at 509, 26 A. 347. *See also Longworth v. McGrath*, 108 Conn. 738, 143 A. 845 (1928).

■ Plaintiff has introduced no evidence from which the Court could calculate the appropriate amounts to be deducted from the market rental value to determine the use value. Accordingly, the Court finds that there is insufficient evidence in the record from which to determine the value of the use of the cable during the period of its unavailability, and plaintiff, therefore, is entitled to recover only nominal damages for the loss of use. *Johnson v. Flammia, supra* 169 Conn. at 501, 363 A.2d 1048.

only a minor portion of the figure derived by plaintiff properly would be allocable to the use of the circuits in this cable. The revenue figures used by plaintiff reflect the total amount that would be due from interstate calls passing through this cable *and others*. A calculation of the amount of revenue attributable from any one call to any one cable would require an allocation of the total revenue produced by a call to the total number of cables, or perhaps length of cable, over which the call had traveled.

4. Testimony at trial indicated that the cable was out of service for approximately twelve hours. Plaintiff also offered evidence, however, showing that a total of 2239.03 circuit hours were lost during the time the cable was

damaged. *See* n. 3, *supra*. Presumably, this figure was reached by multiplying the total number of circuits in the cable (225) by the average number of hours each was out of service. If this is so, the average time each circuit was out of service was a little less than ten hours. This would reduce the applicable market rental value.

Using plaintiff's figure of 2239.03 lost circuit hours, a market rental value can be reached by dividing the rental value per circuit per month ($121.00) by the number of hours in March (744) to determine the rental value per hour per circuit (16.26 cents). Multiplying this by the number of circuit hours lost (2239.03) yields the market rental value of circuit hours lost ($364.14).

In summary, plaintiff is entitled to recover $4,797.11 for the cost of repairs and nominal damages of $1.00 for the loss of use, with interest on the total from the date of injury. *Scribner v. O'Brien, Inc.*, 169 Conn. 389, 406, 363 A.2d 163 (1975). Judgment shall enter accordingly.

It is so Ordered.