**MCI WORLDCOM NETWORK SERVICES, INC.,**
Plaintiff,

v.

**GLENDALE EXCAVATION CORP., Defendant.**

CIVIL ACTION NO. 01–2695 (JEI).

United States District Court,
D. New Jersey.

Oct. 2, 2002.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione by Peter Torcicollo, Esq., One Riverfront Plaza, Newark, NJ, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C. by Mark Blongewicz, Esq., Tulsa, OK, for Plaintiff.

Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski by Richard E. Snyder, Esq., Livingston, NJ, for Defendant.

## OPINION

IRENAS, District Judge.

Presently before the Court are Plaintiff's and Defendant's respective motions for partial summary judgment. For the reasons set forth below, Plaintiff's motion is granted on the issue of negligence and is denied on the issue of trespass. Plaintiff's motion for partial summary judgment on the issue of loss of use damages is denied. Defendant's motion for partial summary judgment on the issue of punitive damages is denied.

## I.

Plaintiff in this action, MCI WorldCom Network Services, Inc. ("MCI"), is a large telecommunications corporation. MCI owns and operates a system of under-ground fiber optic cables that enable it to transmit various pieces of voice, video and data telecommunications. (Torcicollo Certification Ex. A at 28; Ex. B at 35.) One of MCI's underground fiber optic cables is located in the Moorestown, New Jersey area and is the subject of this action.

MCI is the successor-in-interest to an easement granted on February 25, 1985 to Lightnet by Tak Moriuchi, Inc., then the owner of the property through which the easement runs. (Torcicollo Certification Ex. B at 45.) At the time the easement was granted the property was used as a farm. The easement gave MCI the right to install and operate its fiber optic telecommunications cable system through the portion of land designated for the easement. (Torcicollo Certification Ex. F.)

Late in 1999 Glendale Excavation Corporation ("Glendale") contracted with Tamboro Brothers Construction to perform all "earth moving operations" at a construction site for a new school. (Drummond Certification Ex. 1 at 15.) The property where the excavation was to occur included the land through which MCI's easement ran. In December 1999, representatives of MCI and Glendale met to discuss the excavation work and MCI's underground cable. According to Glendale, MCI's representative at the meeting informed Glendale that the cable was buried approximately six feet below the surface and would not interfere with Glendale's excavation plans. (Drummond Certification Ex. 1 at 32–35.) MCI disputes this account and instead claims that no indication was given at that meeting of the depth of the cable and that it was not communicated to Glendale that it would be safe to excavate above the buried cable. (Torcicollo Opposition Certification Ex. A at 21,34.) What is not disputed is that following this meeting MCI temporarily marked the location and depth of

its cable for a distance of approximately 600 feet along Salem Road, as this was the area where Glendale had indicated it would be excavating. (Drummond Certification Ex. 1 at 37; Torcicollo Opposition Certification Ex. A at 36–38.)

On March 20, 2000, pursuant to New Jersey's One–Call Damage Prevention Act ("One–Call Act"), Glendale contacted Garden State Underground (the designated entity for notification purposes under the One–Call Act) to provide notice of the location and details of its intended excavation activities. Glendale stated that it would be excavating north from the intersection of Salem and Westfield Roads, along Salem Road, for a distance of 1,000 feet. (Drummond Certification Ex. 1 at 29.) Glendale claims that MCI did not respond to this notification and failed to mark out the remaining 400 feet that had not been previously marked out based on the initial meeting between MCI and Glendale. (Opp'n Br. at 8.) MCI does not directly assert that it did mark out the cable continuously from the 600 foot mark up to the 1,000 foot mark in any of its submissions to this Court. However, MCI does claim that there was one marker placed approximately at the 1,000 foot mark. (MCI Response Statement of Undisputed Facts ¶ 14.)

On March 27, 2000 Glendale commenced excavation at a location approximately 1,800 feet north of the Westfield and Salem Roads intersection (800 feet away from the location Glendale had specified to Garden State Underground) and promptly severed MCI's underground fiber optic cable while performing the excavation. (Glendale Undisputed Facts ¶ 11.) Glendale states that it did not intend to provide Garden State Underground with the incorrect location of its excavation activities but that it simply misjudged the exact location at which it would be working. (Drummond Certification Ex. 1 at 30.) Glendale claims that when it did not receive a response from MCI following its notification pursuant to the One–Call Act it proceeded with its excavation work because there existed two permanent markers which indicated that Glendale would not be excavating at a location close to the cable. (Drummond Certification Ex. 1 at 50–55.)

On or about June 4, 2001 Plaintiff filed this action seeking recovery under theories of negligence and trespass against Glendale. Plaintiff and Defendant filed the instant motions for summary judgment on August 2, 2002.

## II.

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248, 106 S.Ct. 2505 (citation omitted).

## III.

### A.

■ Plaintiff has asked for summary judgment on the issue of negligence. Violations of the One–Call Act can lead to a private cause of action by cable operators for damage to their underground facilities or property, in addition to the administrative remedies detailed in the statute. N.J. Stat. Ann. § 48:2–86(d) (1998) (stating that "[p]ursuit of any remedy specified in this section shall not preclude the pursuit of any other remedy, including any civil remedy."). Under the One–Call Act:

> [e]vidence that an excavation or demolition that results in any damage to an underground facility was performed without providing the notice required pursuant to section 10 of this act shall be prima facie evidence in any civil or administrative proceeding that the damage was caused by the negligence of the person engaged in the excavation or demolition.

*Id.* § 48:2–89. There is no dispute that Glendale did not provide the proper notice under the Act. The statute required Glendale to specifically detail where it would be excavating.[1] Glendale initially complied with this provision but then proceeded to excavate more than 800 feet from where it had informed Garden State Underground it would be working. As a professional excavation contractor, there is simply no excuse for Glendale's having made such a gross error. It certainly was within Glendale's abilities to accurately measure the distance from the intersection to where it would be excavating. Based on this failure of Glendale to accurately locate its excavation activities, and the provision of the One–Call Act detailed above stating that a violation of the notification requirement is prima facie evidence of negligence, MCI does have a strong claim against Glendale for negligence.

■ In order to prevail on a negligence claim under New Jersey law a plaintiff must satisfy a three-part test. The plaintiff must show that there was a duty on the part of the defendant towards the plaintiff, a breach of that duty, and evidence that the breach was the proximate cause of the injury to the plaintiff. *Harrah v. Minnesota Min. and Mfg. Co.*, 809 F.Supp. 313, 318 (D.N.J.1992); *Labracio Family P'ship v. 1239 Roosevelt Ave., Inc.*, 340 N.J.Super. 155, 161, 773 A.2d 1209 (2001). It is undisputed, based on Glendale's admitted violation of the One–Call Act, that there is prima facie evidence of negligence against Glendale. Yet there is still a question of material fact as to whether Glendale's negligence was the proximate cause of the injury to MCI. Under the One–Call Act there is not just a duty imposed on excavators. An underground facilities operator has a duty, upon notification by an excavator through the One–Call Act, to "[m]ark, stake, locate or otherwise provide the position and number of its underground facilities which may be affected by a planned excavation." N.J. Stat. Ann. § 48:2–80(a)(2) (1998). The New Jersey Board of Public Utilities has issued regulations specifically detailing how underground facilities operators are to mark out their facilities. These regulations require that the temporary markers used by underground facilities operators be placed in very specific locations, and that "the distance between any two marks indicating the same facility shall not be more than 25 feet." N.J. Admin. Code tit. 14, § 2–5.2 (2002).

---

**1.** The One–Call Act states that an excavator, upon notifying the One–Call system, shall provide, "the specific site location ... including the approximate depth of the excavation." N.J. Stat. Ann. § 48:2–82(b)(4) (1998).

■ This Court holds, however, that a violation of the One–Call Act's notification provision leads to a presumption that the relevant underground facilities operator would have complied with that Act's mark-out provisions.[2] This is a rebuttable presumption that is appropriately applied in this type of situation based on the fact that the statute is very clear in its requirements, these requirements are not difficult for an excavator to meet (it should not be difficult to accurately state the location of an excavation), and meeting these requirements should prevent incidents, such as the one in this case, from occurring.

■ While the presumption is rebuttable, it must be assumed that had Glendale complied with the One–Call Act then MCI would have properly marked out its cable. Glendale has not produced much in the way of evidence to rebut this presumption. Looked at in the light most favorable to the defendant, the most Glendale can show (although this is disputed) is that MCI failed to mark out its cable from the 600 foot to the 1,000 foot mark following Glendale's notification to New Jersey Underground. This is simply not enough to rebut the presumption that MCI would have complied with the statute if given proper notice. The notification identified an area for excavation which had already been the subject of discussions between MCI and Glendale. In this context a failure of MCI to respond to the notice is understandable. Such failure is not proof, however, that MCI would not have responded if notified that excavation was going to occur in an area far from and not contiguous to the location originally identified. Glendale has simply not produced any evidence showing that MCI would not have marked out its cable had the actual location of the work been identified. As a result, there is no genuine issue for trial and summary judgment on liability must be granted.

■ Even if Glendale could show that MCI would not have properly marked out its cable had the notification to Garden State Underground been correct, there is still enough evidence of Glendale's negligence to find for MCI in summary judgment. Based on a pure negligence theory, Glendale had a duty to MCI to take reasonable care not to sever its cable, Glendale breached that duty for reasons that will be described below, and that breach was the proximate cause of Glendale's severing the underground cable. *See Harrah,* 809 F.Supp. at 318.

There is no question that Glendale knew that MCI's cable ran underground through the area in which Glendale was excavating. The fact that Glendale met with MCI prior to even informing Garden State Underground of its plans and the fact that MCI then proceeded to mark out 600 feet of cable gave Glendale notice that the cable was in the area. Glendale could not have thought that the cable simply ended at the 600 foot mark.

In addition, at the location where Glendale was actually excavating (approximately 1,800 feet from the intersection) there

**2.** This rule of liability is similar to the "heeding presumption" as used in products liability cases involving a failure to warn issue. Under the heeding presumption there is a rebuttable presumption that had the manufacturer provided a proper warning, the plaintiff would have followed that warning. *Coffman v. Keene Corp.,* 133 N.J. 581, 607–08, 628 A.2d 710 (1993). In order to rebut the presumption the defendant must produce specific evidence that the plaintiff would not have heeded the warning. *Id.* at 609, 628 A.2d 710 ("the manufacturer must prove that had an adequate warning been provided, the plaintiff ... would not have heeded the warning"). It is not enough for the defendant to show that in most cases consumers do not follow warnings, as the presumption exists for public policy reasons. *Id.* at 597–98, 628 A.2d 710.

were two permanent markers indicating that MCI had a cable at that location. While those markers may not have been completely accurate, they certainly gave Glendale notice that there was an MCI cable in the area. Any temporary markout performed by MCI would have been much more detailed than those permanent markers (as the temporary markout was up to the 600 foot point) and would have enabled the excavator to avoid any accidental severing of the cable.[3]

While MCI may have failed to properly mark its cable up to the 1,000 foot mark, Glendale made no attempt to contact MCI and determine the exact location of the cable even though it was well aware that there was an underground cable in the area in which it was excavating. This can only be described as a breach of Glendale's duty to MCI to take reasonable care to avoid severing the cable. Examined in the light most favorable to Glendale, there is simply no evidence that exists which would allow a reasonable jury to find that Glendale was not negligent in its conduct.

### B.

Plaintiff also asks for summary judgment against Glendale on the issue of trespass. As this Court has already found for Plaintiff on the issue of negligence there is no need to examine the issue of trespass. This issue is now moot and Plaintiff's motion for summary judgment based on trespass is denied.

### C.

Both parties ask for summary judgment on the issue of loss of use damages. While it is certainly too early in the process to be discussing the issue of damages, it is clear that MCI will most likely be entitled to loss of use damages. However, it is equally clear that the rental value of a substitute cable may not be an appropriate measure of those damages, as MCI would prefer. Accordingly, this Court will deny summary judgment to Plaintiff regarding loss of use damages.

Many jurisdictions have recognized that loss of use damages are an appropriate remedy for damage to underground facilities. *See AT & T Corp. v. Lanzo Constr. Co., Florida,* 74 F.Supp.2d 1223, 1225 (S.D.Fla.1999); *American Tel. & Tel. Co. v. Connecticut Light & Power Co.,* 470 F.Supp. 105, 107 (D.Conn.1979). The basic premise for loss of use damages is that the owner of a piece of property is damaged by more than just repair costs when they are no longer able to use the property as they normally would. Therefore, the injured party should be compensated for the period of time during which their property, in this case a fiber optic cable, was disabled. For the most part, loss of use damages are measured by looking at the rental value of a substitute of the damaged property. The Eastern District of New York justified this method of measuring loss of use damages by stating that, "[t]he value of the lost use of a thing for a period of time is . . . estimated by the expense of acquiring the use of that item for that time, *i.e.,* the rental cost of a replacement." *Kuwait Airways Corp. v. Ogden Allied Aviation Services,* 726 F.Supp. 1389, 1391 (E.D.N.Y.1989).

New Jersey also recognizes loss of use damages. *See Graves v. Baltimore & N.Y. Ry. Co.,* 76 N.J.L. 362, 364, 69 A. 971 (N.J.Sup.Ct.1908) (stating that "when per-

---

**3.** As was made clear at oral argument, the permanent markers are used simply as general locating devices intended to give an approximation of the location of the underground cables. MCI's practice of temporarily marking its underground cables in the event of an excavation is a much more detailed process involving the use of various techniques that produce a much more exact and detailed location of its cables.

sonal property, in the actual use of the owner, is injured by a trespasser, so that the owner is deprived of its use, the special damage necessarily and proximately attendant upon such privation may be proven to augment the damages beyond the diminution in value of the thing injured."); *Camaraza v. Bellavia Buick Corp.*, 216 N.J.Super. 263, 523 A.2d 669 (1987); *State Farm Mutual Auto Ins. Co. v. Toro*, 127 N.J.Super. 223, 227, 316 A.2d 745 (1974). The court in *American Telephone & Telegraph Co. v. Connecticut Light & Power Co.* stated that "[l]oss of use ... is the loss of an incident of ownership[:] the right to use." 470 F.Supp. at 108. There is no question in this case that MCI lost, for a period of time, the right to use its cable. Therefore, loss of use is most likely an appropriate component, in addition to repair costs, of any measure of damages for the severing of the underground cable. MCI's cable was disabled and was unusable for a period of time, theoretically leading to more than just repair costs for the company.

Unlike other jurisdictions, however, New Jersey does not use replacement rental value as the only measure of loss of use damages. In New Jersey other factors, including whether the injured party actually rented a substitute, are used in determining the level of loss of use damages. *Camaraza*, 216 N.J.Super. at 268, 523 A.2d 669. It would be grossly unfair to require Glendale to pay to MCI almost $2,000,000 in damages should it be determined that MCI's actual losses were not very high due to MCI's ability to reroute its lost calls to other parts of its network. As the court stated in *Camaraza* regarding only using the rental cost of a substitute to determine loss of use damages in a case involving damage to an automobile:

> [a]lthough this approach has the virtue of relying upon an easy to acquire, precise measure of use value, we conclude that it is not consistent with general

principles of damages. The degree of inconvenience for loss of use of an automobile will vary depending upon the individual circumstances of the plaintiff ... We conclude that the trier of fact should be permitted to consider the individual circumstances of a plaintiff in determining loss of use damages. Therefore, while the rental value of a substitute vehicle may be admitted as evidence of loss of use damages, it is not conclusive and the trier of fact also may consider other evidence of such damages.

*Id.* at 268, 523 A.2d 669. There are issues in dispute that will affect the measurement of loss of use damages and it is best left to a more appropriate moment to determine such damages. As a result, Plaintiff's motion for summary judgment on the issue of loss of use damages is denied.

### D.

■ The final issue is Defendant's motion for summary judgment on the issue of punitive damages. In order to be awarded punitive damages in New Jersey a plaintiff must show actual malice, which is defined as an intentional wrongdoing (an evilminded act) or an act accompanied by wanton and wilful disregard of the rights of another. *Di Giovanni v. Pessel*, 55 N.J. 188, 191, 260 A.2d 510 (1970); *Sandler v. Lawn–A–Mat Chem. & Equip. Corp.*, 141 N.J.Super. 437, 448, 358 A.2d 805 (1976); *La Bruno v. Lawrence*, 64 N.J.Super. 570, 575, 166 A.2d 822 (1960), *certif. denied*, 34 N.J. 323, 168 A.2d 694 (1961).

■ In this case, Plaintiff will have a difficult time showing that Glendale severed the cable intentionally or that Glendale was wanton and wilful in its conduct. MCI must understand that its burden is very high in proving that punitive damages are appropriate. However, at this time a judgment on the issue of punitive damages

would be premature. Accordingly, Defendant's motion for summary judgment on the issue of punitive damages is denied.

### IV.

For the reasons set forth above, Plaintiff's motion for partial summary judgment is granted with respect to the issue of negligence and is denied on the issue of trespass. Plaintiff's motion for partial summary judgment on the issue of loss of use damages is denied. Defendant's motion for partial summary judgment on the issue of punitive damages is denied.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter having appeared before the Court upon Plaintiff's and Defendant's motions for partial summary judgment and the Court having reviewed the submissions of the parties, for the reasons set forth in an opinion issued by this Court, which findings of fact and conclusions of law are incorporated herein by reference, and for good cause appearing,

**IT IS** on this *2nd* day of October, 2002,

**ORDERED THAT:**

1. Plaintiff's motion for partial summary judgment is **GRANTED** as to Plaintiff's claim of liability based on negligence against Defendant.

2. Plaintiff's motion for partial summary judgment is **DENIED** as to Plaintiff's claim of negligence based on trespass against Defendant.

3. Plaintiff's motion for partial summary judgment is **DENIED** as to Plaintiff's claim for loss of use damages against Defendant.

4. Defendant's motion for partial summary judgment is **DENIED** as to Plaintiff's claims for loss of use and punitive damages against Defendant.