995 So.2d 221 (2008)
MCI WORLDCOM NETWORK SERVICES, INC., Appellant,
v.
MASTEC, INC., Appellee.
No. SC04-948.
Supreme Court of Florida.
July 10, 2008.
Rehearing Denied November 19, 2008.
*222 James J. Proszek and Anthony J. Jorgenson of Hall, Estill, Hardwick, Gable, Golden, and Nelson, P.C., Tulsa, Oklahoma, for Appellant.
Alan J. Kluger and Steve I. Silverman of Kluger, Peretz, Kaplan and Berlin, P.L., Miami, Florida, for Appellee.
David P. Ackerman and Michael A. Weeks of Ackerman, Link and Sartory, P.A., West Palm Beach, Florida, on behalf of Sprint Corporation, Southwestern Bell Telephone, L.P., and Broadwing Communications, LLC; and Caryn Lynn Bellus of Kubicki Draper, P.A., Miami, Florida, on behalf of Lewis E. Krantz d/b/a Treasure Coast Directional Drilling and Michael A. Lind d/b/a Pipeline Directional Services, Inc., as Amici Curiae.
PER CURIAM.
We have for review the following two questions concerning Florida law certified by the United States Court of Appeals for the Eleventh Circuit that are determinative of a cause pending in that court and for which there appears to be no controlling precedent:
IS A TELECOMMUNICATIONS SERVICES CARRIER ENTITLED TO DAMAGES FOR THE LOSS OF USE OF A FIBER-OPTIC CABLE DAMAGED BY A DEFENDANT WHEN THE CARRIER INTENDED TO HAVE THE FULL CAPACITY OF THE DAMAGED CABLE AVAILABLE FOR ITS USE SHOULD THE NEED HAVE ARISEN, BUT THE CARRIER WAS ABLE TO ACCOMMODATE WITHIN ITS OWN NETWORK THE TELECOMMUNICATIONS TRAFFIC CARRIED BY THE DAMAGED CABLE AND THE CARRIER PRESENTED NO EVIDENCE THAT IT SUFFERED LOSS OF REVENUE OR OTHER DAMAGES DURING THE TIME THE CABLE WAS UNAVAILABLE?
IF THE TELECOMMUNICATIONS CARRIER IS ENTITLED TO LOSS OF USE DAMAGES, DOES THE PRE-INJURY VALUE OF THE DAMAGED CABLE ESTABLISH A LIMIT TO THOSE DAMAGES, OR SHOULD THE FAIR MARKET RENTAL VALUE OF AN EQUIVALENT REPLACEMENT CABLE FOR THE TIME REASONABLY NECESSARY TO MAKE REPAIRS SERVE AS THE MEASURE OF LOSS OF USE DAMAGES?
MCI WorldCom Network Servs., Inc., v. Mastec, Inc., 370 F.3d 1074, 1078-79 (11th Cir.2004). We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. For the reasons which follow, we reword the certified questions into one question, answer the reworded question in the negative, and return this case to the United States Court of Appeals for the Eleventh Circuit.

FACTUAL AND PROCEDURAL HISTORY
Mastec, an excavation company, inadvertently severed one of MCI's underground fiber-optic cables in downtown Miami, and the cable was not repaired until ninety-seven hours later. However, MCI did not suffer a disruption of its service because it was able to redirect the telecommunications traffic from the damaged cable to other cables in its system. As a result, MCI avoided any loss of profits. MCI claimed compensatory damages in the amount of $23,000 for the cost of repairs, loss-of-use damages in the amount of $868,000, and punitive damages. The loss-of-use damages claim was based upon the amount that MCI claims it could have paid, but did not, to rent the use of an equivalent substitute cable from another *223 telecommunications company for the time reasonably necessary to make repairs. The district court found against MCI on its loss of use damages claim. The Eleventh Circuit found that this case raised unsettled questions of Florida tort law and certified the two questions presented.

DISCUSSION
The issue here is whether MCI is entitled to loss of use damages measured by the cost of renting replacement cable for its fiber-optic cable which was damaged by Mastec during the excavation. Therefore, we have reworded the certified questions as follows:
IS A TELECOMMUNICATIONS SERVICES CARRIER ENTITLED TO LOSS OF USE DAMAGES MEASURED BY THE COST OF RENTING A REPLACEMENT FOR A FIBER-OPTIC CABLE DAMAGED BY A DEFENDANT WHEN THE CARRIER WAS ABLE TO ACCOMMODATE WITHIN ITS OWN NETWORK THE TELECOMMUNICATIONS TRAFFIC CARRIED BY THE DAMAGED CABLE AND THE CARRIER PRESENTED NO EVIDENCE THAT IT RENTED REPLACEMENT CABLE OR SUFFERED ANY LOSS OF REVENUE OR OTHER DAMAGES DURING THE TIME THE CABLE WAS UNAVAILABLE?
Because MCI was able to reroute the telecommunications traffic carried on its damaged cable so that there was neither an interruption of service nor any actual lost profits suffered, Mastec argues that MCI should not be awarded loss-of-use damages. Mastec asserts that the purpose of compensatory damages would be frustrated if loss-of-use damages were awarded in the instant case because Mastec would essentially be punished for damaging MCI's fiber-optic cable while MCI received a windfall. MCI, on the other hand, argues it should not be punished for having the foresight to install this backup system at a considerable cost to itself. Therefore, MCI argues that it is entitled to the loss-of-use damages claimed, that is, the cost of renting a replacement cable. We essentially agree with Mastec and hold that under these circumstances MCI is not entitled to loss-of-use damages measured by the cost of renting replacement cable.
Generally, a person or entity injured by either a breach of contract or by a wrongful or negligent act or omission of another is entitled to recover a fair and just compensation that is commensurate with the resulting injury or damage. See Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936); Broxmeyer v. Elie, 647 So.2d 893 (Fla. 4th DCA 1994). A plaintiff can receive compensatory or actual damages for the loss or injury caused by the action of the defendant. See McLeod v. Continental Ins. Co., 591 So.2d 621 (Fla.1992), superseded on other grounds by § 627.727(10), Fla. Stat. (Supp. 1992). Compensatory damages are designed to make the injured party whole to the extent that it is possible to measure such injury in monetary terms. See Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla.1981); Totale, Inc. v. Smith, 877 So.2d 813 (Fla. 4th DCA 2004); Cooperative Leasing, Inc. v. Johnson, 872 So.2d 956 (Fla. 2d DCA 2004). A plaintiff, however, is not entitled to recover compensatory damages in excess of the amount which represents the loss actually inflicted by the action of the defendant. See 17 Fla. Jur.2d Damages §§ 3-7 (2004).
Moreover, loss-of-use damages can be an element of compensatory damages when the damage is to personal property and the damage amounts to less than total destruction of the property. See Restatement (Second) of Torts § 928 (1979). *224 However, "the purpose of compensatory damages is to compensate, not to punish defendants or bestow a windfall on plaintiffs." Cooperative Leasing, Inc. v. Johnson, 872 So.2d at 958; see also Phillips v. Ostrer, 481 So.2d 1241, 1246 (Fla. 3d DCA 1985). As this Court has explained,
The fundamental principle of the law of damages is that the person injured by breach of contract or by wrongful or negligent act or omission shall have fair and just compensation commensurate with the loss sustained in consequence of the defendants act which give[s] rise to the action. In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained.
Hanna v. Martin, 49 So.2d 585, 587 (Fla. 1950). In this case, there was no loss of use of any part of the cable system because the service was rerouted to another part of the system.
A number of courts have addressed the issue of loss-of-use damages and the cost of rental of a replacement in the context of the telecommunications industry under circumstances similar to those present here. The majority of these cases have found the telecommunication carrier was not entitled to loss-of-use damages based on the cost to rent a replacement cable where there has been no rental and there has been no interruption of service. In Southwestern Bell Telephone Co. v. Harris Co., 353 Ark. 487, 109 S.W.3d 637 (2003), while the Harris Company was excavating, it damaged both a copper cable and a fiber-optic cable belonging to Bell Telephone. Id. at 638. Among the damages sought by Bell were loss-of-use damages in the amount it would have cost Bell to rent replacement cables while the damaged copper and fiber-optic cables were inoperable. Id. Harris argued that Bell was not entitled to any damages for loss of use because Bell did not actually rent any replacement cables. Id. The trial court granted Harris's motion for a directed verdict on this issue. Id. In finding that Bell was not entitled to loss-of-use damages, the Supreme Court of Arkansas held that Arkansas law only recognizes loss-of-use damages for personal property in motor vehicle cases and emphasized the fact that Bell did not rent any replacement cables while the copper and fiber-optic cables were being repaired. Id.
Likewise, in MCI Worldcom Network Services, Inc. v. Lind, No. 00-4407-CIV-JORDAN, 2003 WL 24304128, 2003 U.S. Dist. LEXIS 10758 (S.D.Fla. Feb. 27, 2003), Lind severed one of MCI's fiber-optic cables. Id., 2003 WL 24304128, at *5, 2003 U.S. Dist LEXIS 10758, at *1. The district court denied summary judgment for MCI and held the cost of renting a replacement system was not the proper measure of MCI's loss-of-use damages because MCI's system suffered no interruption of service and the telecommunications traffic on the damaged cable was instantly rerouted at the moment of severance. Id., 2003 WL 24304128, at *5, 2003 U.S. Dist. LEXIS at *1-4. The district court then denied MCI's motion for reconsideration, steadfastly adhering to its former finding that rental costs were not the appropriate measure of damages. Id., 2003 WL 24304128, at *1, 2003 U.S. Dist. LEXIS at *2. In denying MCI's motion for reconsideration, the district court stated:
An award of loss of use damages based on rental value for over $200,000 would be a windfall to MCI because it suffered no actual loss due to its ability to instantaneously reroute traffic to other cables in its system....
... In the prior order, I merely indicated that allowing MCI to recover over $ 200,000 in loss of use damages for a cable with a value significantly less than that would be contrary to Florida law. *225 This was not meant to be a limitation on MCI's compensatory damages. If a liability is established, MCI can still recover all permissible damages relating to the repair of the damaged cable.
Id., 2003 WL 24304128, at *6, 2003 U.S. Dist. LEXIS 10758, at *18-19 (citation omitted).
The Fourth Circuit Court of Appeals in MCI Worldcom Network Services, Inc. v. OSP Consultants, Inc., 78 Fed.Appx. 876 (4th Cir.2003), also addressed the issue of loss-of-use damages when a telecommunications cable was accidentally severed. OSP severed one of MCI's fiber-optic cables, and MCI sought damages for repair costs and loss of use. Id. at 877. However, service was not interrupted because MCI was able to reroute the telecommunications traffic carried on the damaged cable. Id. While the district court awarded over $30,000 to MCI for the repair costs, it did not award any damages for loss of use because MCI was not required to obtain additional capacity from outside of its own network. Id. The Fourth Circuit, uncertain of whether the district court had made the proper finding under Virginia law, certified the following question to the Supreme Court of Virginia:
Is a telecommunications services carrier entitled to damages for the loss of use of a fiber-optic cable damaged by a defendant when the carrier intended to have the full capacity of the damaged cable available for its use should the need have arisen, but the carrier was able to accommodate within its own network the telecommunications traffic carried by the damaged cable and the carrier presented no evidence that it suffered loss of revenue or other damages during the time that the cable was unavailable?[1]
Id.
The Supreme Court of Virginia answered this question in the negative, and the Fourth Circuit affirmed the district court's decision that MCI was not entitled to loss-of-use damages under Virginia law. Id. In answering the certified question in the negative, the Supreme Court of Virginia stated:
We do not agree with MWNS's [MCI WorldCom Network Services] contention [that the extra capacity that it built into its fiber-optic network that allowed it to accommodate the traffic carried by the damaged cable is the functional equivalent of the spare boat used in The Cayuga, 5 F. Cas. 326 (E.D.N.Y.1868), aff'd, 5 F. Cas. 329 (C.C.E.D.N.Y.1870), aff'd, 81 U.S. (14 Wall.) 270, 20 L.Ed. 828 (1871)]. In the present case, the evidence shows that MWNS maintains excess network capacity primarily for the general use of its business so that it can accommodate varying levels of telecommunications traffic. While it is true that the excess capacity enables MWNS to reroute traffic in the event of emergencies, MWNS does not reserve particular cables for use exclusively in emergencies, as in the "spare boat" cases. Accordingly, consistent with the holding in Brooklyn Terminal, we hold that, in the circumstances of this case, MWNS is not entitled to loss-of-use damages, and we answer the certified question in the negative.
MCI WorldCom Network Services, Inc. v. OSP Consultants, Inc., 266 Va. 389, 585 S.E.2d 540, 544 (2003).[2]
*226 In MCI Worldcom Network Services, Inc. v. Morris Plumbing & Electric Co., No. 00-4250-CIV-GARBER, 2002 WL 33004353, 2002 U.S. Dist. LEXIS 26466 (S.D.Fla. Oct. 23, 2002), a non-party utility contractor, Treasure Coast, severed a "backbone fiber-optic cable" belonging to MCI while excavating. Id., 2002 WL 33004353, at *2, 2002 U.S. Dist. LEXIS 26466, at *5. Due to the damage, MCI rerouted its telecommunications traffic to a "redundant cable." Id. On the following day, Morris, while performing an underground directional bore, severed the same backbone fiber-optic cable that Treasure Coast had damaged. Id. At the time Morris further damaged the backbone cable, service was still being routed through the redundant cable. The damage to the backbone cable was repaired approximately 89.20 hours after Morris had severed it. Id., 2002 WL 33004353, at *2, 2002 U.S. Dist. LEXIS 26466, at *5-6. Approximately three weeks later, both Morris and Treasure Coast severed another of MCI's backbone fiber-optic cables during an underground directional bore, and service was rerouted to a redundant cable for approximately 36.62 hours until that backbone cable was repaired. Id., 2002 WL 33004353, at *2, 2002 U.S. Dist. LEXIS 26466, at *6.
Among the damages sought by MCI were loss-of-use damages which MCI alleged it had sustained because it was unable to use its backbone cables while they were being repaired. Id., 2002 WL 33004353, at *2, 2002 U.S. Dist. LEXIS 26466, at *7. MCI argued that the proper measure of loss-of-use damages would be the cost of renting a replacement cable, regardless of whether MCI had in fact rented a replacement cable and whether MCI was able to reroute the telecommunications traffic to other cables in its network. Id., 2002 WL 33004353, at *4, 2002 U.S. Dist. LEXIS 26466, at *13. The district court found that MCI was "entitled to no loss-of-use damages, or at most nominal loss-of-use damages" and that awarding MCI the cost of renting a replacement cable would be "grossly unfair" to Morris. Id., 2002 WL 33004353, at *7, 2002 U.S. Dist. LEXIS 26466, at *20.
More recently, in MCI Worldcom Network Services, Inc. v. W.M. Brode Co., 413 F.Supp.2d 868 (N.D.Ohio 2005), the court denied MCI loss-of-use damages measured by the rental value of a comparable cable because no such damage had been incurred. The issues before the district court were the same as the issues presented in this case, i.e., whether MCI was *227 entitled to loss-of-use damages and whether the loss-of-use damages, if applicable, should be the pre-injury value of the cable or the rental value of comparable cable. In determining that loss-of-use damages measured by either standard were not applicable, the court stated that under Ohio law a plaintiff is only entitled to compensatory damages in an amount that will compensate for actual losses. The court concluded by saying:
This Court finds the rulings of the U.S. District Court of the Eastern District of Virginia, Supreme Court of Virginia, the Fourth Circuit Court of Appeals, and U.S. District Court of the Southern District of Florida compelling and decisive. MCI may not charge the expenses saved MCI by its ingenious redundant network to Brode as if the expenses had never been saved. MCI had the foresight and good business acumen to implement a system that allowed for uninterrupted network service in the event of damage to a particular segment of cable. As a result MCI presumably gained a competitive advantage, enhanced customer service and forestalled expenses it may have incurred but for the redundancy capability of its network. As in Brooklyn Terminal, [287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932),] this redundancy was used in the ordinary course of business and was not reserved expressly for emergencies. Therefore, the Court finds that loss-of-use damages are inappropriate and grants Defendant[']s motion for partial summary judgment as MCI may not recover loss of use damages when no actual [] loss of service occurred.
413 F.Supp.2d at 874.
While the majority of cases hold that a telecommunications company like MCI would not be entitled to loss-of-use damages based on loss of revenues when there has been no interruption of service, there have been a few decisions which have reached the opposite conclusion both in situations where there has been an interruption of service and in those with no interruption of service. For example, in MCI WorldCom Network Services, Inc. v. Kramer Tree Specialists Inc., No. 02 C 7150, 2003 WL 22139794 (N.D.Ill. June 19, 2003), Kramer severed a fiber-optic cable belonging to MCI. Id. at *1. MCI was able to reroute a portion of its telecommunication traffic but was unable to reroute eight systems on its long distance network. Several circuits in its local network were also interrupted. As a result of the severance, MCI had a disruption of service for 4.85 hours during which 16,668 calls were blocked. Id.[3] MCI sought damages in the amount of $13,212 for repair costs and $307,847.35 for loss of use of its network systems. Id. In denying Kramer's motion for summary judgment, the district court found that MCI was entitled to loss-of-use damages under Illinois law because it had been deprived of the use of its fiber-optic cable. Id. at *2-3. MCI was allowed to recover for the loss of use of some of its long distance network system capacity. The district court further found that the measure of such damages under Illinois law would be the reasonable rental value of a similar cable for the period of deprivation, regardless of whether MCI had actually rented a substitute cable. Id. at *2-3. In making this determination, the court relied in part on the inability to reroute a number of its calls and on the fact that a number of calls were blocked.
Similarly, in MCI Worldcom Network Services, Inc. v. Glendale Excavation *228 Corp., 224 F.Supp.2d 875 (D.N.J.2002), Glendale severed one of MCI's underground fiber-optic cables while excavating. Id. at 877. In denying MCI's motion for summary judgment on the issue of loss-of-use damages, the district court found that MCI would most likely be entitled to loss-of-use damages, though not measured by the rental value of a replacement cable.
While it is certainly too early in the process to be discussing the issue of damages, it is clear that MCI will most likely be entitled to loss of use damages. However, it is equally clear that the rental value of a substitute cable may not be an appropriate measure of those damages, as MCI would prefer....
....
... There is no question in this case that MCI lost, for a period of time, the right to use its cable. Therefore, loss of use is most likely an appropriate component, in addition to repair costs, of any measure of damages for the severing of the underground cable. MCI's cable was disabled and was unusable for a period of time, theoretically leading to more than just repair costs for the company.
Unlike other jurisdictions, however, New Jersey does not use replacement rental value as the only measure of loss of use damages. In New Jersey other factors, including whether the injured party actually rented a substitute, are used in determining the level of loss of use damages. Camaraza [v. Bellavia Buick Corp., 216 N.J.Super. 263, 523 A.2d 669, 672 (1987)]. It would be grossly unfair to require Glendale to pay to MCI almost $2,000,000 in damages should it be determined that MCI's actual losses were not very high due to MCI's ability to reroute its lost calls to other parts of its network.
Id. at 880-81.[4]
In a case from the United States District Court for the Southern District of Florida, AT & T Corp. v. Lanzo Construction Co., 74 F.Supp.2d 1223 (S.D.Fla.1999), the court allowed loss-of-use damages. In that case, Lanzo struck a water main, and the resulting leak and wash-out damaged one of AT & T's fiber-optic cables. Id. at 1224. AT & T was able to reroute the telecommunications traffic using other fiber-optic cables in its system while the damaged cable was repaired. Id. In concluding that AT & T was entitled to loss-of-use damages, the court rejected Lanzo's argument that the damages were inappropriate because AT & T did not suffer a complete loss of its phone system. Id. at 1225. The district court then determined that the appropriate measure of damages was the amount it would cost AT & T to rent a fiber-optic cable because "Florida law explicitly provides that loss of use damages are measured by the amount necessary to rent a similar article or other suitable article within which to perform the services usually performed by the damaged article during the period of repair." Id.
However, in several other cases courts have discussed the Lanzo decision and declined to adopt its reasoning. For example, in MCI Worldcom Network Services v. Lind, No.00-4407-CIV-JORDAN, 2003 U.S. Dist. Lexis 10758 (S.D.Fla. Feb. 27, 2003), in an order denying MCI's motion for reconsideration, the court reaffirmed its ruling that MCI was not entitled to summary judgment on the issue of loss-of-use damages. In so doing, the court disagreed *229 with the reasoning in Lanzo, which was based on the damaged cable being the relevant property for loss-of-use purposes. Instead, the district court relied on the reasoning in MCI Worldcom v. Morris Plumbing in determining that the relevant property could be the entire telecommunication system as opposed to the damaged cable. Lind, 2003 WL 24304128, at *1, 2003 U.S. Dist. LEXIS 10758, at *3.
In vacating a prior order which had declared the relevant property to be the damaged cable, the court in Morris said:
In support of the February 28, 2002, Omnibus Order, this Court relied on AT&T Corp. v. Lanzo Constr. Co., Fla., 74 F.Supp.2d 1223 (S.D.Fla.1999). Defendants contend that there is no evidence that the telecommunications system that MCI employed is similar enough to the system that AT & T utilized in Lanzo to warrant adoption of the Lanzo Court's conclusion that the chattel "consisted of a single fiberoptic cable." 74 F.Supp.2d at 1225. The Court agrees, and therefore will re-consider its decision.
Even the evidence that MCI submitted appears to support the conclusion that the MCI backbone and redundant fiber-optic cables were set up to operate as one integrated unit which would automatically remain operable, i.e. automatically re-route traffic to the redundant cable, in the event of a severance. See [affidavit submitted by MCI] ("the initial phase of traffic re-routing is designed to occur automatically and nearly instantaneously"). Nothing in the Lanzo opinion suggests that AT & T had a similar system.
Morris, 2002 WL 33004353, at *5, 2002 U.S. Dist. LEXIS 26366, at *13-14. The Morris court also addressed the issue of whether or not the cost of renting a replacement cable would be the appropriate measure of loss-of-use damages if either the court or a jury determined that the relevant property was the single damaged fiber-optic cable. Id., 2002 WL 33004353, at *7, 2002 U.S. Dist. LEXIS 26466 at *20. In opining that the cost of renting a replacement cable was not the appropriate standard in these situations, the court distinguished the telecommunications situation from circumstances involving the replacement of vehicles in automobile cases. The court's ultimate conclusion was based essentially on the fact that there was no loss of telecommunication services. Id., 2002 WL XXXXXXXXX, at *5-6, 2002 U.S. Dist. LEXIS 26466, at *16-19.
However, in this telecommunication services case, MCI has not demonstrated that it is possible to determine the flow of calls to a particular cable in a system of cables where there has been no loss of service and thus no loss of revenue. Because MCI did not actually suffer the loss of use of its telecommunications service, damages for loss of use measured by the rental replacement value would result in a windfall to MCI. Any damages to MCI based on rental replacement are purely theoretical. Consequently, we find persuasive the majority of cases which deny loss-of-use damages for rental of replacement cable when there has been no rental because they further the goal of awarding damages in an amount equal to the loss sustained. See, e.g., MCI Worldcom Network Services, Inc. v. OSP Consultants, Inc., 266 Va. 389, 585 S.E.2d 540, 544 (2003).

CONCLUSION
For the foregoing reasons, we answer the reworded certified question in the negative and hold that loss-of-use damages based on rental replacement value is not the appropriate measure of damages when there have been no such damages incurred *230 and the telecommunications traffic carried by the damaged cable has been accommodated within the telecommunications carrier's own network so there has been no loss of service. We return this case to the United States Court of Appeals for the Eleventh Circuit for further proceedings.
It is so ordered.
QUINCE, C.J., and ANSTEAD, PARIENTE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs in result only with an opinion.
WELLS, J., recused.
LEWIS, J., concurring in result only.
I dissent with regard to the majority's approach which combines and blends the two distinct issues identified and certified to us by the United States Court of Appeals for the Eleventh Circuit. Instead of blending the two certified questions, which only confuses the distinct issues presented in this case, we should respond to the specific questions as certified. I also dissent with regard to the majority's reasoning in response to the combined issue as rephrased because the majority incorrectly concludescontrary to well-established Florida lawthat evidence of lost profits or revenue has now become part of the analysis, and is apparently required as a predicate for loss-of-use damages for the personal property at issue here. The majority reaches this result without reliance on a single Florida case.
I would answer the first certified question in the affirmative and hold that loss-of-use damages are, and always have been, recoverable under Florida law for injury to personal property. I find no basis to exclude fiber-optic cable from this category, and Florida law has never required evidence of loss of revenue, loss of profits, or other similar injury as a condition precedent to such recovery. I would provide a qualified response to the second certified question that, generally, the measure of loss is limited to the pre-injury value of cable or the fair-market rental value of a cablenot the rental value of an entire system or network of cable, unless the damage to the single-item cable location caused the entire system or network to become inoperable.

Individual Cable as Personal Property
As we resolve these legal issues, we should first squarely address whether we are including an individual fiber-optic cable, as a component of a larger telecommunications system and network, in the same category as other personal property subject to general Florida loss-of-use property damage law. This general loss-of-use damage law applies when personal property is damaged but not totally destroyed. One might imply from the majority opinion that the Court has now excluded a damaged individual cable that is part of a larger network from existing loss-of-use damage law. However, there is no express statement in the majority opinion that such property is excluded from the general category in which all other forms of personal property are considered in Florida, nor is there any reason provided for this exclusion. The majority diverges off into a tangential discussion of proof of loss, revenue, and profits, which are not, in my view, controlling in consideration and application of the general rule of law in Florida with regard to damage to personal property and loss-of-use damages. The majority has created at least an impression or appearance that the elements for evaluation or the measurement of loss-of-use damages are now somehow different in this particular case without addressing or applying the available, relevant, and controlling Florida law in this area.
*231 I would not exclude cable from the general category of personal property to which general Florida loss-of-use damages law applies. I see no distinction with any significant difference between an individual cable and other types of personal property, and neither party nor the majority provides any sound distinction or test to separate any particular personal property into a distinct, singular category to which general Florida law on this issue does not apply. In my view, there are various and multiple types of personal property that are singular or individual in nature, but may become integrated into or within a system or network of service, that do not and should not receive different treatment (e.g., a single bolt within a larger network system, a motor-vehicle taxi within a taxi-transport system, an individual aircraft integrated into an airline-transport system, an individual computer integrated into a larger technology system, etc.). These individual components should not receive different treatment than other types of personal property. Damage to individual and singular items of personal property should receive consistent treatment under Florida law with regard to the general issue of loss-of-use damages (and this has been the case until today)even if the personal property is connected within a larger system or network. The Eleventh Circuit recognized the necessity of resolving this initial issue when it certified the first independent question.

Assessment of Loss-of-Use Damages
Next, we proceed to the truly controlling issue in this case, which the Eleventh Circuit presented in the second certified question. The Court of Appeals essentially posed the key question as how loss-of-use damages are to be measured. The Restatement (Second) of Torts, which the majority correctly recognizes as governing actions that involve loss of use damages in Florida, states:
When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
....
(b) the loss of use.
Restatement (Second) of Torts § 928 (1979) (emphasis supplied); see also majority op. at 223. We recognized the validity of the above-quoted Restatement (Second) provision when we approved an amended standard jury instruction that included an instruction for loss of use in cases involving damage to personal property. See Standard Jury Instructions (Civil Cases), 290 So.2d 49 (Fla.1974); see also Fla. Std. Jury Instr. (Civ.) 6.2(h) (instructing the jury to "take into consideration any loss (claimant) sustained ... by being deprived of the use of his (reference property) during the period reasonably required for its [replacement] [repair]" when determining the amount of damages to assess in cases involving harm to personal property). This Court and all Florida district courts of appeal follow this Restatement (Second) principle. See, e.g., Badillo v. Hill, 570 So.2d 1067, 1068 (Fla. 5th DCA 1990), cited with approval in, Fla. Drum Co. v. Thompson, 668 So.2d 192 (Fla.1996) (Florida appellate courts follow the Restatement (Second) of Torts section 928 when assessing loss-of-use damages); Travelers Indem. Co. v. Parkman, 300 So.2d 284, 285 (Fla. 4th DCA 1974) (same); Meakin v. Dreier, 209 So.2d 252, 253-54 (Fla. 2d DCA 1968) (same); Airtech Serv., Inc. v. MacDonald Constr. Co., 150 So.2d 465, 466 (Fla. 3d DCA 1963) (same); McMinis v. Phillips, 351 So.2d 1141, 1141 (Fla. 1st DCA 1977) (applying Restatement (Second) of Torts section 928). However, neither the comments to this section of the Restatement (Second), the comments to Florida's standard jury instruction, nor *232 any of the existing Florida decisions state that a loss of profits or loss of revenue is an essential element for the recovery of loss-of-use damages. Although in my view, the majority opinion may correctly resolve the underlying dispute based on the fact that MCI is actually seeking damages for the loss of capacity or loss of use of its entire systemas opposed to damages for the loss of use of the particular fiber-optic cableI write to voice my concern with the majority's broad reasoning that appears to now inject into Florida law a requirement that a showing of lost profits or revenue is a prerequisite to the recovery of any loss-of-use damages in Florida. The analysis of the majority is disconcerting because it relies on non-Florida cases which, in my view, are contrary to the well-established law of this jurisdiction.
I find no support in Florida jurisprudence for the proposition that an owner of damaged personal property must demonstrate that the damage has resulted in an actual loss of profits or revenue as a condition precedent to recovery of loss-of-use damages. Rather, Florida precedent time and again has held, consistent with the Restatement (Second), that recovery for the loss of use of an item of personal property is proper when it is demonstrated that the personal property has been harmed by the conduct of another but has not been totally destroyed. This is a completely separate issue from whether loss of profits or revenue has been or can be established. See AT&T Corp. v. Lanzo Constr. Co., 74 F.Supp.2d 1223 (11th Cir. 1999); Merrill Stevens Dry Dock Co. v. Nicholas, 470 So.2d 32 (Fla. 3d DCA 1985); Ft. Lauderdale Transfer & Rigging, Inc. v. Callahan Motor Co., Inc., 446 So.2d 138 (Fla. 4th DCA 1983); Meakin v. Dreier, 209 So.2d 252 (Fla. 2d DCA 1968); Airtech Serv., Inc. v. MacDonald Constr. Co., 150 So.2d 465 (Fla. 3d DCA 1963). Moreover, this Court has held that even where damages for lost profits may not be recoverable due to the doctrine of avoidable consequences, an owner may still be entitled to loss-of-use damages measured by the rental value of a substitute item. See A. Mortellaro & Co. v. Atl. Coast Line R.R. Co., 91 Fla. 230, 107 So. 528 (1926). In my view, the extra-jurisdictional cases upon which the majority reliesBrooklyn Eastern District Terminal v. United States, 287 U.S. 170, 53 S.Ct. 103, 77 L.Ed. 240 (1932); The Cayuga, 5 F. Cas. 326 (E.D.N.Y.1868), aff'd, 5 F. Cas. 329 (C.C.E.D.N.Y.1870), aff'd, 81 U.S. (14 Wall.) 270, 20 L.Ed. 828 (1871); Southwestern Bell Telephone Co. v. Harris Co., 353 Ark. 487, 109 S.W.3d 637 (2003); and MCI Worldcom Network Services, Inc. v. OSP Consultants, Inc., 266 Va. 389, 585 S.E.2d 540 (2003)do not reflect the law of Florida and, more importantly, are actually contrary to Florida law. Therefore, these non-Florida cases should not provide the basis for our decision.
Although damage to the personal property of anothera fiber-optic cable in the instant mattercarries loss-of-use damages, it may not serve as the basis for a claim of loss of capacity or loss of use of the entire system. Thus, while the majority may ultimately arrive with the correct result this case, the supporting legal analysis is, in my view, severely flawed, misdirected, and contrary to longstanding Florida law. This case should be resolved within, and the majority should address, the measure or extent of the loss-of-use damages, and not by eliminating that category of damages from Florida law.
NOTES
[1] This is one of the same questions the Eleventh Circuit has certified to this Court.
[2] The "spare boat" cases referred to by the Supreme Court of Virginia are such as The Cayuga, 5 F. Cas. 326 (E.D.N.Y.1868), and like cases. In The Cayuga, a ferryboat was damaged and had to undergo repairs for seventeen days before it could return to the fleet. 5 F. Cas. at 327. Because the ferryboat had regularly carried passengers and lost seventeen days worth of revenue as a result of the damage, the district court determined that loss-of-use damages in the amount of the total revenue lost during the time of repairs was appropriate. Id.

In Brooklyn Eastern District Terminal v. United States, 287 U.S. 170, 176-77, 53 S.Ct. 103, 77 L.Ed. 240 (1932), the United States Supreme Court distinguished the "spare boat" cases. There, a dredge belonging to the United States collided with a tugboat belonging to Brooklyn Eastern. 287 U.S. at 172, 53 S.Ct. 103. The issue in that case was "whether the full-time hire of an extra boat must be charged to the respondent [United States] as damage flowing from the collision when there was no need of such a boat to keep the business going, and none in fact was used or paid for." Id. at 174, 53 S.Ct. 103. Furthermore, the Supreme Court found that Brooklyn Eastern did not lose any revenue or any enjoyment while the tugboat was being repaired. Id. at 175, 53 S.Ct. 103. The Court also noted that there "has been a refusal to extend the [spare boat] doctrine to boats acquired and maintained for the general uses of the business." Id. at 177, 53 S.Ct. 103. Looking to English law, in particular a speech by Lord Sumner, the Court held that under the circumstances of the particular case (i.e., no lost revenue and no need for a spare tugboat), Brooklyn Eastern was not entitled to loss-of-use damages. Id. at 177, 53 S.Ct. 103.
[3] It must be noted that in the case before us MCI did not have a similar disruption of service.
[4] It must be noted that there is no mention in the opinion of whether MCI suffered a disruption in its telecommunications service. The opinion merely states that MCI's cable was damaged and unusable.