DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**PHILIP MORRIS USA INC.,**
Appellant,

v.

**ROBERT A. GORE, SR.,** individually, and as Personal Representative of
the **ESTATE OF GLORIA H. GORE,**
Appellee.

No. 4D20-932

[April 13, 2022]

Appeal and cross-appeal from the Circuit Court for the Nineteenth Judicial Circuit, Indian River County; Janet Croom, Judge; L.T. Case No. 312008CA010052.

David M. Menichetti and Geoffrey J. Michael of Arnold & Porter Kaye Scholer LLP, Washington, D.C., and Terri L. Parker of Shook, Hardy & Bacon LLP., Tampa, for appellant.

Andrew A. Harris and Grace Mackey Streicher of Harris Appeals, P.A., Palm Beach Gardens, and Jason L. Odom of Gould, Cooksey, Fennell, P.A., Vero Beach, for appellee.

KLINGENSMITH, J.

Appellant Philip Morris USA, Inc. ("Philip Morris") appeals numerous issues, including a final judgment awarding appellee Robert A. Gore, Sr., ("Gore") as personal representative of the Estate of Gloria H. Gore, $2,515,086.53 in attorney's fees and related expert costs in an *Engle* progeny action pursuant to a Proposal for Settlement. Gore cross-appeals the trial court's reduction in the attorney's fees and costs awarded from the sums requested. We reverse the attorney's fees award against Philip Morris and remand this matter to the trial court to award a reasonable fee pursuant to Gore's Proposal for Settlement that does not include duplicative amounts which Gore has already been paid or awarded for pursuing the claims against any co-defendants. We affirm on all other issues raised in both the appeal and cross-appeal.

**Procedural History**

In 2008, Gore filed an *Engle* progeny action against Philip Morris and R.J. Reynolds Tobacco Company ("Reynolds") for wrongful death damages following the death of his wife. The next year, Gore served proposals for settlement ("PFS 1") on both Philip Morris and Reynolds, offering to resolve all claims in the amount of $250,000.00. These proposals were not accepted. The case proceeded to trial in 2014; however, it resulted in a mistrial. Before the re-trial, Gore again served proposals for settlement ("PFS 2") on both defendants. Neither party accepted, and the case went to a second trial.

The jury returned a verdict in favor of Gore, awarding him compensatory damages of $2 million, which the trial court reduced by comparative fault. Philip Morris and Reynolds appealed the judgment, and Gore cross-appealed, arguing the trial court erred by applying comparative fault to reduce his compensatory damages. This Court affirmed on Philip Morris and Reynolds' appeal but reversed on Gore's cross-appeal. *See Philip Morris USA Inc. v. Gore*, 238 So. 3d 828 (Fla. 4th DCA 2018). On remand, the trial court entered judgment in favor of Gore for the original jury verdict of $2 million.

After the judgment, Gore moved for an award of attorney's fees and costs pursuant to his two rejected PFSs. He requested over $5.6 million in attorney's fees stemming from over 7,000 hours expended by his legal team. Before the evidentiary hearing on costs and fees, Reynolds settled Gore's attorney's fees claim against them ("Reynolds' settlement"). Following this settlement, Philip Morris served Gore with discovery to disclose the terms of the Reynolds' settlement.

Gore and Philip Morris stipulated to the total number of hours Gore's attorneys were entitled to recover, agreeing to 6,266.38 hours. They also stipulated to the hours of a specific attorney, Lester Kaney, agreeing he worked 198.9 hours. At the evidentiary hearing, Gore presented the testimony of six trial attorneys and an attorney's fees expert. He requested $1,100.00 an hour for four attorneys, $750.00 an hour for six other attorneys, and $500.00 for another three. However, on cross-examination, many of Gore's testifying attorneys admitted they typically charged less than the amounts sought.

The trial court awarded Gore $1,964,424.75 in attorney's fees and $69,916.78 in expert costs against Philip Morris, for a total of $2,034,341.53 ("Fees Order"). Although Gore requested the use of current hourly rates to calculate the award, the trial court stated the rates must

be "closely in line with rates in the approximate timeframe when the work was performed" and used rates from 2008 to 2015. The trial court also reduced the hourly rates of all of Gore's attorneys based on the affidavits of four of Gore's attorneys who had submitted evidence of reasonable hourly rates in an unrelated *Engle* progeny case, *R.J. Reynolds Tobacco Co. v. Koballa*, 5D11-2914, 2012 WL 4052859 (Fla. 5th DCA Sept. 11, 2012), *opinion withdrawn*, 99 So. 3d 630 (Fla. 5th DCA 2012).

When the trial court issued its Fees Order, Philip Morris moved to apply a setoff of the total fees award in the amount of the Reynolds' settlement, arguing a setoff was required under sections 46.015 and 768.041, Florida Statutes (2020), to prevent Gore from receiving an unreasonable double recovery. The trial court denied Philip Morris' motion, finding the setoff statutes did not apply to attorney's fees or costs awarded pursuant to Florida Rule of Civil Procedure 1.442 and Florida's PFS statute, section 768.79, Florida Statutes (2020). The trial court then entered a final judgment on attorney's fees and costs, including prejudgment interest, in the total amount of $2,515,086.53. This appeal and cross-appeal followed.

**Application of sections 46.015 and 768.041 to motions to setoff attorney's fees**

"Whether the trial court awarded a proper set-off is a pure question of law reviewed *de novo*, and 'no deference is given to the judgment of the lower courts.'" *Cornerstone SMR, Inc. v. Bank of Am., N.A.*, 163 So. 3d 565, 568 (Fla. 4th DCA 2015) (quoting *D'Angelo v. Fitzmaurice*, 863 So. 2d 311, 314 (Fla. 2003)). The issue presented is whether a non-settling defendant in a civil action is entitled to reduce an attorney's fees award pursuant to a PFS by the amount previously paid by a settling defendant toward their separate PFS. The trial court denied Phillip Morris such a reduction after analyzing sections 46.015 and 768.041.

Setoffs are generally governed by sections 46.015 and 768.041, both of which require setoffs as to amounts received from a joint tortfeasor. *Grobman v. Posey*, 863 So. 2d 1230, 1237 (Fla. 4th DCA 2003). "The set-off provision in section 768.041(2) 'was designed to prevent duplicate or overlapping compensation for identical damages.'" *Cornerstone SMR*, 163 So. 3d at 569 (quoting *Gordon v. Marvin M. Rosenberg, D.D.S., P.A.*, 654 So. 2d 643, 644 (Fla. 4th DCA 1995)).

Section 46.015 provides in relevant part:

(1) A written covenant not to sue or release of a person who is or may be jointly and severally liable with other persons for

3

a claim shall not release or discharge the liability of any other person who may be liable for the balance of such claim.

(2)  At trial, if any person shows the court that the plaintiff, or his or her legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.

§ 46.015(1)–(2), Fla. Stat. (2020).

Nearly identical in its terms, Section 768.041 provides:

(1)  A release or covenant not to sue as to one tortfeasor for property damage to, personal injury of, or the wrongful death of any person shall not operate to release or discharge the liability of any other tortfeasor who may be liable for the same tort or death.

(2)  At trial, if any defendant shows the court that the plaintiff, or any person lawfully on her or his behalf, has delivered a release or covenant not to sue to any person, firm, or corporation in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment and enter judgment accordingly.

§ 768.041(1)–(2), Fla. Stat. (2020).

The trial court correctly found the language in neither section 46.015 nor section 768.041 applied to provide a setoff for the attorney's fees paid by Reynolds.  "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." *City of Parker v. State*, 992 So. 2d 171, 176 (Fla. 2008) (quoting *Daniels v. Fla. Dep't of Health*, 898 So. 2d 61, 64 (Fla. 2005)).  "The words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."  *Advisory Opinion to Governor re Implementation of Amendment 4, The Voting Restoration Amendment*, 288 So. 3d 1070, 1078 (Fla. 2020) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012)).

Sections 46.015(2) and 768.041(2) do not support Philip Morris' motion for a setoff, because they apply only to the "satisfaction of the damages sued for." The plain language of those statutes clearly specifies an intention to apply to *damages* and not *attorney's fees*. *See Parker*, 992 So. 2d at 176; *Advisory Opinion*, 288 So. 3d at 1078. In fact, the inclusion of the word "damages" in the statute establishes that setoffs made pursuant to those statutes can only apply to the category of compensation sued for— the loss Gore sustained under his wrongful death claim. *See Advisory Opinion*, 288 So. 3d at 1078–80 (quoting *White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 778 (Fla. 2017)) ("[U]nder the *expressio unius est exclusio alterius* canon, 'the mention of one thing implies the exclusion of another.'"); *Bidon v. Dep't of Prof'l Regul., Fla. Real Estate Com'n*, 596 So. 2d 450, 452 (Fla. 1992). Because Gore sued for compensatory damages, not for attorney's fees, those statutes are inapplicable when seeking a setoff for fees and costs awarded pursuant to a PFS.

While we agree with the trial court's interpretation of the foregoing statutes as to whether they applied to provide a setoff for attorney's fees, the inquiry does not end there. In fact, to resolve the question presented, we must also consider the language of the PFS statute.

**Reasonableness of attorney's fees awarded pursuant to section 768.79**

The general rule, and one expressly recognized in the federal system, requires the trial court to consider "reasonableness" when awarding fees and costs. *See Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)) ("The primary concern in an attorney fee case is that the fee awarded be reasonable, that is, one that is adequately compensatory to attract competent counsel yet which avoids producing a windfall for lawyers."). Those federal courts presented with analogous cases have held that when one defendant settles with a plaintiff, but another defendant does not, the "non-settling defendant is entitled to offset attorney's fees owed by the amount already paid by settling defendants." *Corder v. Brown*, 25 F.3d 833, 840 (9th Cir. 1994); *Bravo v. City of Santa Maria*, 810 F.3d 659, 668 (9th Cir. 2016) ("[A] district court abuses its discretion when it refuses to offset an award of attorney fees by a settling defendant's payment of those same fees."). We find the logic in the holdings of these cases to be persuasive in highlighting the unfairness and unreasonableness of denying a reduction under such circumstances.

5

On this point, Florida's PFS statute specifically provides that any fees awarded pursuant to a rejected PFS must be "reasonable":

> **768.79 Offer of judgment and demand for judgment.**—
> (1) In any civil action for damages filed in the courts of this state, if a defendant files an offer of judgment which is not accepted by the plaintiff within 30 days, the defendant shall be entitled to recover *reasonable costs and attorney's fees* incurred by her or him or on the defendant's behalf . . . .
>
> . . .
>
> (6)(b) If a plaintiff serves an offer which is not accepted by the defendant, and if the judgment obtained by the plaintiff is at least 25 percent more than the amount of the offer, the plaintiff shall be awarded *reasonable costs, including investigative expenses, and attorney's fees*, calculated in accordance with the guidelines promulgated by the Supreme Court, incurred from the date the offer was served.

§ 768.79(1), (6)(b), Fla. Stat. (2020) (emphasis added).

Florida courts have generally viewed double recoveries and windfalls as unreasonable. This is reflected throughout our jurisprudence. *See Minotty v. Baudo*, 42 So. 3d 824, 833 (Fla. 4th DCA 2010) (quoting *Montage Grp., Ltd. v. Athle-Tech Comput. Sys., Inc.*, 889 So. 2d 180, 199 (Fla. 2d DCA 2004)) ("A double recovery based on the same element of damages is prohibited."). *MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 224 (Fla. 2008) (quoting *Coop. Leasing, Inc. v. Johnson*, 872 So. 2d 956, 958 (Fla. 2d DCA 2004)) ("[T]he purpose of compensatory damages is to compensate, not to punish defendants or bestow a windfall on plaintiffs."). "[D]amages awarded should be equal to and precisely commensurate with the injury sustained." *MCI Worldcom*, 995 So. 2d at 224) (quoting *Hanna v. Martin*, 49 So. 2d 585, 587 (Fla. 1950)); *Designs for Vision, Inc. v. Amedas, Inc.*, 632 So. 2d 614, 615 (Fla. 2d DCA 1994); *Besett v. Basnett*, 437 So. 2d 172, 173 (Fla. 2d DCA 1983); *Homes by Deltona, Inc. v. Outdoor Site Sols., LLC*, 230 So. 3d 909, 911 (Fla. 5th DCA 2017); *Makar v. Gowni*, 983 So. 2d 769, 772 (Fla. 5th DCA 2008); *P & C Thompson Bros. Constr. Co. v. Rowe*, 433 So. 2d 1388, 1389 (Fla. 5th DCA 1983).

Even the setoff statutes, though they do not apply here, were designed to further this principle by "prevent[ing] an award of double damages." *Acadia Partners, L.P. v. Tompkins*, 759 So. 2d 732, 739 (Fla. 5th DCA 2000). When a pretrial settlement with one defendant covers the very

same fees and costs a plaintiff is trying to recover from the non-settling defendant, reasonableness dictates that a party cannot recover the same costs twice. *See, e.g., Regan Roofing Co. v. Superior Court*, 27 Cal. Rptr. 2d 62, 76 (Ct. App. 1994).

Gore argues that attorney's fees and costs awarded pursuant to a PFS is a sanction such that the deterrent principle at the heart of section 768.79 allows for a double recovery of fees. Although this statute was indeed designed to deter unnecessary civil litigation and encourage settlements, it was not intended to permit double reimbursement of identical litigation expenses. Though section 768.79 does not specifically address this scenario, nothing in the statute's wording supports the premise that the Legislature intended for the same litigation expenses to be paid multiple times by separate parties—even as a sanction.

Likewise, no policy reasons exist for courts to permit a double recovery in these cases. A litigant's decision to pursue a claim in the face of a rejected PFS does not hinge on the prospect of recovering attorney's fees multiple times for the same litigation activities. Nor would eliminating duplicative fees payments significantly influence an attorney's decision to settle a civil suit. The potential prejudice to a non-settling party and the perverse incentives that a double recovery would create, especially in the context of a substantial fee settlement with another party, is obvious.

To avoid such windfalls, a court may consider the time expended by the requesting party in litigating against the claims or defenses of each opposing party when deciding the proper apportionment and reduction. *See Cassedy v. Wood*, 263 So. 3d 300, 303–04 (Fla. 1st DCA 2019) (finding "a party may be awarded fees pursuant to terms in a contract and section 768.79 simultaneously" where it appears that the contractual attorney's fee provision did not fully cover the reasonable value of fees incurred for prosecuting the action); *Vargas v. Hudson Cnty. Bd. of Elecs.*, 949 F.2d 665, 677 (3d Cir. 1991) (finding the trial court properly divided a fees award "in the exercise of its discretion in appraising the respective roles of all the defendants and their participation in this complex litigation"); *Corder v. Gates*, 947 F.2d 374, 382 (9th Cir. 1991) (finding the time expended by the plaintiff in pursuing each defendant may be considered when deciding whether apportionment was proper).

We agree with Philip Morris that if a reduction is not permitted in cases where fees are paid by other parties under separate proposals, the result is an impermissible windfall which, under Florida's jurisprudence, is manifestly unreasonable. We therefore hold that because an attorney is entitled only to a "reasonable" fee under the PFS statute when an award

of fees is appropriate, the trial court must consider any fees and costs previously paid by settling parties when fashioning an award and make appropriate reductions to avoid a double recovery.

**Trial court's adjustment of attorney's hours and rates**

In his cross-appeal, Gore argues the trial court abused its discretion by re-setting the hourly rate for four of his attorneys based on a consideration of the hourly rates in an unrelated case. He also asserts the trial court abused its discretion by disregarding the parties' stipulation as to attorney Kaney's hours and reducing the number of his recoverable hours.

"[T]he trial court has 'broad discretion' to award fees; on appeal, this court will reverse a fee award only if there has been an abuse of discretion." *Schmitz v. Schmitz,* 891 So. 2d 1140, 1141–42 (Fla. 4th DCA 2005). Discretion is abused "when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." *Canakaris v. Canakaris,* 382 So. 2d 1197, 1203 (Fla. 1980). "If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Id.*

This issue is one we have previously considered in a recent case, *El Brazo Fuerte Bakery 2 v. 24 Hour Air Service, Inc.,* 330 So. 3d 552 (Fla. 4th DCA 2021). There, the plaintiff moved to determine the amount of attorney's fees and expert costs to which it was entitled. *Id.* at 554. The county court found the plaintiff's attorneys were entitled to the hours which its expert had opined were reasonable but only at a rate one-half of what its expert believed was reasonable. *Id.* at 555.

"While trial courts are not bound by expert opinions provided at evidentiary hearings or by attorney [testimony] submitted at such hearings, they may only reduce attorneys' fees that they deem to be excessive *if they make specific findings to support that determination.*" *Id.* at 556 (quoting *Lizardi v. Federated Nat'l Ins. Co.,* 322 So. 3d 184, 189 (Fla. 2d DCA 2021) (emphasis in original). We noted that in *Lizardi,* where the trial court had not made specific findings as to why it had reduced the requested number of hours or hourly rate, the Second District held:

> Had the trial court . . . made <u>specific</u> findings as to why it reduced the requested number of hours or hourly rate, the order would have likely satisfied *Rowe's* requirements. . . . But the order as written, merely stating the hourly rate and

reasonable number of compensable hours without any elucidation as to why those figures were used instead of the requested figures, does not comport with the requirements of *Rowe.*

*Id.* (emphasis in original).

As the court in *Westaway v. Wells Fargo Bank, N.A. for Carrington Mortgage Loan Tr., Series 2007-RFC1, Asset-Backed Pass through Certificates*, 230 So. 3d 505 (Fla. 2d DCA 2017), also explained:

[W]hen evaluating the reasonableness of a requested fee award, judges should not abandon what [they] learned as lawyers or [their] common sense. . . . [W]e cannot affirm the [circuit] court's award when the record is totally devoid of any evidence to support a conclusion that the award was reasonable. [T]he [circuit court] did not indicate that her determination of reasonable hourly rates was rooted in her experience as a lawyer, nor did she explain why the varying rates that she applied were more reasonable than the single rate that [the defendant's] attorneys proposed (and all of the evidence adduced at the fee hearing supported). [The circuit court's] only apparent justification for reducing the hourly rate was her personal opinion of what attorneys should charge based on their number of years in practice. This alone does not constitute competent, substantial evidence.

*Id.* at 508–09 (internal citations and quotation marks omitted) (quoting *D'Alusio v. Gould & Lamb, LLC*, 36 So. 3d 842, 846 (Fla. 2d DCA 2010)).

We find the trial court did not err in setting the attorney's fees rates by applying her experience and knowledge gained as a judge while presiding over similar cases. *See Nunez v. Allen*, 292 So. 3d 814, 820 (Fla. 5th DCA 2019); *see also Miller v. First Am. Bank & Tr.*, 607 So. 2d 483, 485 (Fla. 4th DCA 1992) ("The existence of such evidence does not require that we abandon our own expertise, much less our common sense."). However, as to attorney Kaney's hours, the parties agreed to the proper number to be considered, and nonetheless, the trial court went outside of the record evidence and disregarded this stipulation. *See Giovanini v. Giovanini*, 89 So. 3d 280, 282 (Fla. 1st DCA 2012) ("[A]bsent a stipulation by the parties, the reasonableness and the necessity of the fee sought should have been determined at a hearing."). Without a compelling reason to do otherwise, the trial court should not have disturbed that agreement. *See Lift v. Lift*, 1 So. 3d 259, 261 (Fla. 4th DCA 2009) ("Because appropriately made

stipulations entered into by the parties are generally binding on the court as well as on the parties, the court erred in failing to follow them.").

**Conclusion**

We reverse the attorney's fees award against Philip Morris and remand this matter to the trial court to award a reasonable fee pursuant to Gore's PFS that does not include duplicative amounts which Gore has already been paid or awarded for pursuing the claims against any co-defendants. For this determination, the trial court shall use the parties' stipulated attorney hours when making those reductions. We affirm on all other issues raised in both the appeal and cross-appeal not specifically addressed herein.

*Reversed and remanded with instructions.*

KUNTZ, J., concurs.
ARTAU, J., concurs in part and dissents in part with an opinion.

ARTAU, J., concurring in part and dissenting in part.

I respectfully dissent in part because the majority impermissibly reaches an issue that was not challenged on appeal—the reasonableness of the attorney fee award. The appellant made it abundantly clear on the first page of its brief that it "does not challenge the trial court's exercise of its discretion in determining the reasonable amount of fees that [the appellee] incurred." Indeed, the appellant had stipulated below to the reasonable number of hours expended by the appellee, leaving in dispute only the reasonable hourly rates of all but four timekeepers.

"A stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court." *Gunn Plumbing, Inc. v. The Dania Bank*, 252 So. 2d 1, 4 (Fla. 1971). As this court explained in *Polyglycoat Corp. v. Hirsch Distributors, Inc.*, 442 So. 2d 958 (Fla. 4th DCA 1983), "[w]hen points, positions, facts, and supporting authorities are omitted from the brief, a court is entitled to believe that such are waived, abandoned, or deemed by counsel to be unworthy." *Id.* at 960.

While I would agree that a trial court should exercise its discretion in fashioning a reasonable attorney fee award that does not include attorney time spent litigating claims against other parties, the appellant waived this issue by stipulating below to the reasonable number of attorney hours expended by appellee in litigating this case against it. Consequently, the

10

appellant did not challenge the reasonableness of the attorney fee award on appeal as conceded in its brief. Instead, the appellant chose to limit its challenge on appeal to the issues upon which I concur with the majority—the enforceability of the offer of judgment and the trial court's rejection of its entitlement to a statutory setoff. We should also limit our review to those issues and affirm the trial court's judgment.

* * *

***Not final until disposition of timely filed motion for rehearing.***

11